559 A.2d 25

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Leon WILLIAMS, Appellee.***

Supreme Court of Pennsylvania.

Argued Oct. 28, 1988.

Decided March 7, 1989.**

Reargument Denied April 25, 1989.

* Editor's Note: This opinion was originally published at 554 A.2d 912. It is published here as corrected.

** This decision was considered and rendered prior to March 7, 1989.

William R. Cunningham, Dist. Atty., William T. Horton, Asst. Dist. Atty., Erie, John J. Trucilla, for appellant.

Bruce L. Getsinger, Schroeck & Segel, P.C., Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is a Commonwealth appeal by allowance on the question of when convictions of separate crimes merge, for sentencing purposes, because they arise from the same criminal act.

The appellee in this case, Leon Williams, pled guilty to aggravated assault, criminal attempt at robbery and unlawful restraint. These charges arose from an incident on May 30, 1986 in which Williams attacked a 61–year–old woman who was walking her dog. Williams grabbed the victim from behind, choked her and threw her to the ground, beat her, and attempted to rob her. When the victim screamed, neighbors came to help, and Williams ran away before he was able to complete the robbery. Williams was apprehended shortly after the crime and later was positively identified by the victim. The victim suffered a broken nose, fractured skull, fractured foot, black eyes, cuts, bruises, abrasions and psychological trauma.

As indicated above, Williams pled guilty to aggravated assault, criminal attempt at robbery and unlawful restraint. On September 5, 1986 he was sentenced to five to ten years for aggravated assault, a consecutive term of one and a half to ten years for attempted robbery, and a consecutive term of one and a half to five years for unlawful restraint. The total sentence was eight to twenty-five years. Further, Williams was ordered to pay the costs of prosecution and to

make restitution of $1,160.10 plus any future medical costs incurred by the victim.

A motion to reconsider the sentence was filed and denied, and Williams took an appeal to Superior Court. Superior Court partially vacated the judgment of sentence and remanded for resentencing on the ground that the unlawful restraint conviction merged with the aggravated assault and attempted robbery convictions for sentencing purposes 368 Pa.Super. 315, 534 A.2d 101. In Superior Court's view, the unlawful restraint of the victim was coextensive with the restraint occasioned by the aggravated assault and the attempted robbery. The court went on to distinguish this case from another case in which the restraint was not coextensive with other criminal acts, but was a separate successive criminal act. The facts of this aggravated assault and this attempted robbery, according to Superior Court, " 'necessarily included' the unlawful restraint involved so that proof of both the aggravated assault and the criminal attempt robbery required proof of the acts upon which the unlawful restraint conviction is predicated." The lower appellate court further determined that the unlawful restraint conviction did not serve a substantially different state interest from the state interests already protected by the assault and attempt convictions:

> The aggravated assault conviction and (to a lesser extent) the criminal attempt (robbery) conviction fully vindicate the Commonwealth's interest in protecting individuals from the risk of serious bodily injury and the type and degree of restraint which (in the instant case) the unlawful restraint conviction is intended to vindicate.

Judge Wieand, sitting on the Superior Court panel, disagreed that the unlawful restraint conviction merged with the other convictions. He argued that the crime of unlawful restraint contains the element of restraint, which is not present in the other crimes, and therefore asserted that the crime of unlawful restraint protects a state interest not protected by the other convictions. He thus concluded that

the unlawful restraint conviction should not merge with the other convictions.

The Commonwealth petitioned for allowance of appeal from Superior Court's order and this Court granted allocatur to address the question of whether the crimes involved in this case merge for sentencing purposes.

In *Commonwealth v. Michael Williams*, 514 Pa. 124, 135, 522 A.2d 1095, 1101 (1987), this Court summarized the law of merger as follows:

> [M]erger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. To determine whether multiple offenses involve substantially different interests, or how many evils are present in a given criminal act, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the Crimes Code.

Superior Court in *Commonwealth v. Leon Williams* explained when two crimes "necessarily involve" each other as follows:

> When courts decide under the merger doctrine that two crimes "necessarily involve" one another, it does not always mean that all the elements of one crime are included in the other. It means that on the facts of the case the two crimes were so intimately bound up in the same wrongful act that as a *practical* matter proof of one crime necessarily proves the other, so that they must be treated as the same offense. *See, e.g., Commonwealth v. Jackson*, 271 Pa.Super. 131, 412 A.2d 610 (1979); *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975). If the same facts show that practically speaking there was only one offense against the Commonwealth, then the defendant may be punished

for only one offense despite the number of chargeable offenses arising out of the transaction.

344 Pa.Super. 108, 125, 496 A.2d 31, 40 (1985).

Crimes "necessarily involve" each other, therefore, if one of two possible scenarios occurs: (1) the crimes have the same elements [1] (i.e., lesser included offenses),[2] or (2) the facts of the case are such that although the elements of the crimes differ, the facts which establish one criminal charge also serve as the basis for an additional criminal charge. An example of this is the case at bar, where the facts of throwing the victim down and beating her simultaneously establish the factual basis for the crimes of aggravated assault and unlawful restraint.

■ If it is determined that the elements of the crimes charged are the same, or that the same operative facts

---

1. The elements of the crimes charged in this case are as follows:
**Criminal attempt**
 (a) **Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. § 901.
 **Robbery**
 (a) **Offense defined.**
 (1) A person is guilty of robbery if, in the course of committing a theft, he:
 (i) inflicts serious bodily injury upon another . . . .
 18 Pa.C.S. § 3701.
 **Aggravated assault**
 (a) **Offense defined.**
 A person is guilty of aggravated assault if he:
 (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life
 . . .
 18 Pa.C.S. § 2702
 **Unlawful restraint**
 A person commits a misdemeanor of the first degree if he knowingly:
 (1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury . . . .
 18 Pa.C.S. § 2902.

2. A lesser included offense is a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense. For example, theft is a lesser included offense of robbery.

underlie the crimes charged, the court must then, under the analysis set out in *Michael Williams,* determine whether the Commonwealth has substantially different interests in prosecuting the defendant for two or more separate crimes. What the court is really asked to do at the second stage of the analysis is make two determinations: (1) what interests of the Commonwealth are at stake in the offenses charged; and (2) how the facts of the case bear on the Commonwealth's interests. The latter point is expressed in our *Michael Williams* opinion as "how many evils are present in a given criminal act." *Id.* 514 Pa. at 125, 522 A.2d 1095, 1101 (1987), and in Superior Court's *Commonwealth v. Leon Williams,* 344 Pa.Super. 108, 143, 496 A.2d 31, 50 (1985) as:

> [C]ourts should remember that the test is a flexible, fact-based tool *for determining how many offenses against the Commonwealth have actually been committed.* Despite the repeated and varied attempts of judges to state one "true test" of merger, the question of merger will often turn on an appraisal of the precise facts of the case.

(Emphasis added).

*In other words, at step two a court has to determine exactly how the Commonwealth has been injured (how many "evils" are present) based on the court's understanding of the Commonwealth's interests and the facts of the case.* Although we ourselves promulgated this analysis in *Michael Williams,* we now feel that the analysis is flawed and must be abandoned. There are two things wrong with the *Michael Williams* merger analysis. First, the interests of the Commonwealth in the enactment of any given criminal statute are difficult to define with any precise degree of certainty. Robbery, for example, may be said to protect property interests, since it appears in a section of the Crimes Code concerning offenses against property. However, robbery may also be said to protect against violence to persons, since a necessary element of robbery is force or the threat of force. Most conservative-

ly, it would seem that robbery protects both interests, but when one says that, one is really doing little more than paraphrasing the words of the statute. The difficulty, then, is that although a court must identify the relevant Commonwealth interests in order to decide whether one crime merges with another, there is no clear way to do this, and if one merely paraphrases the words of each statute as indicative of the Commonwealth's interest, no charges would ever merge if the statutes contained distinct paraphrasable elements. That no charges would ever merge, however, was not what was originally intended, for the analysis began with the possibility that crimes having distinctly different elements *might* merge.

The second difficulty with our merger analysis as expressed in *Michael Williams* is that it purports to offer guidance, but it actually offers no guidance at all. Before one can even attempt to state which Commonwealth interests are implicated, one must be able to state "how many offenses against the Commonwealth have actually been committed," *Leon Williams, supra*, or "how many evils are present in a given criminal act," *Michael Williams, supra*. But there is no guidance anywhere on how to do this. In the case at bar, for example, one reasonable person might view the throwing down and beating of this victim as two components of an assault; another reasonable person might view the same facts as an unlawful restraint and an assault.

In other words, in order to apply our two part-merger analysis, one must, when the facts of one crime are the same facts that support the other crime charged, determine exactly how the Commonwealth has been injured. But apart from applying all applicable criminal statutes to the facts of the crime, there is no guidance on how to determine how the Commonwealth has been injured. The two-part merger analysis, therefore, is not an analysis at all, but merely a mask for the reality that there is no cohesive, complete set of rules for determining when merger should occur.

■ In view of these shortcomings of our merger analysis as it was expressed in *Commonwealth v. Michael Williams*, supra, we now hold that *except for lesser included offenses*, the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime is hereby abrogated and abolished. It follows, therefore, that the crimes of aggravated assault and unlawful restraint in the instant case do not merge, for one of these crimes is not a lesser included offense of the other, and there is no argument, apart from the interest analysis, in favor of their merger. The order of Superior Court, therefore, must be reversed.

Reversed.

NIX, C.J., joins the majority opinion and files a concurring opinion.

PAPADAKOS, J., files a concurring and dissenting opinion which is joined by LARSEN, J.

McDERMOTT, J., files a dissenting opinion which is joined by LARSEN, J.

NIX, Chief Justice, concurring.

In my concurring opinion in *Commonwealth v. Williams*, 514 Pa. 124, 138–139, 522 A.2d 1095, 1102 (1987), I strongly urged that we should continue to follow in this jurisdiction the traditional doctrine of merger which excluded the conviction and sentencing for lesser included offenses:

Under this doctrine a defendant may not be convicted and sentenced for a lesser necessarily included offense where he has also been convicted and sentenced for a greater offense which encompassed it. *Commonwealth v. Soudani*, 398 Pa. 546, 159 A.2d 687, *cert. denied*, 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960); *Commonwealth v. McCusker*, 363 Pa. 450, 70 A.2d 273 (1950); *Commonwealth ex rel. Shaddock v. Ashe*, 340 Pa. 286, 17 A.2d 190 (1941); *Commonwealth ex rel. Russo v. Ashe*, 293 Pa. 322, 142 A. 317 (1928); *Commonwealth v. Parker*, 146 Pa. 343, 23 A. 323 (1892) (per curiam); *Hunter v. Com-*

monwealth, 79 Pa. 503 (1875); *Dinkey v. Commonwealth*, 17 Pa. 126 (1851); *Harman v. Commonwealth*, 12 Serg. & Rawle 69 (1825); *Respublica v. Roberts*, [2 U.S. 124] 2 Dall 124, 1 Yeates 6, 1 L.Ed. 316 (1791) (Shippen, J.). The key to the proper applicability of that doctrine is whether the lesser offense is a constituent element of the greater offense. The reasoning for such a view is obvious. Where the legislature has determined the range of sentence to be imposed for the conviction of the major offense, it is to be assumed that judgment encompassed the culpability of any lesser included offenses.

I am pleased to see the majority has now come to see the wisdom of that position. I, therefore, am pleased to join the opinion of the majority.

PAPADAKOS, Justice, concurring and dissenting.

It is distressing to see this Court once again repudiate precedent less than two years old especially where no party has argued that the precedent is in need of reversal or that it provides an unworkable test. Today, a majority of this Court gratuitously reverses our prior holding of *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), upon its self-serving declaration that the *Michael Williams* merger analysis is flawed and must be abandoned. As I understood that case, we summarized the law of merger and held that:

> Merger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. To determine whether multiple offenses involve substantially different interests, or how many evils are present in a given criminal act, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the crimes code. *Michael Williams*, 514 Pa. at 135, 522 A.2d at 1101.

This test was designed to give direction to the trial courts and our Superior Court to keep in mind that in multiple sentencing situations the sole issue is one of *statutory* construction, whereby the courts must determine, in the absence of legislative expression to the contrary, whether the legislature intended to prescribe multiple punishments under two separate statutory provisions for what might arguably be considered the "same offense." *Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983). Apparently, today's majority has decided that it is easier to ignore the legislative intent and simply to resort to a mechanical test and apply merger only if a crime is a lesser included offense.

Unfortunately, the majority has forgotten that the legislature has included in *its* catalogue of crimes many types of crimes whose elements overlap and has prescribed penalties for *each* of these crimes. Our function as a judiciary is to determine when it is appropriate to impose multiple sentences in these overlapping crime situations and thereby give efficacy to the scheme of multiple sentences legislatively enacted. The old merger analysis resurrected by today's majority is a return to the days when this Commonwealth was a common law jurisdiction and when the *judiciary* fashioned sentences as part of its common law powers. Merger was an appropriate sentencing tool for the *judiciary* to fashion and apply to sentencing schemes since it was devising and imposing them.

Today, however, the legislature has taken away from the judiciary the common law right of prescribing sentences and in its place has promulgated a crimes code with a complete sentencing code. We are no longer at liberty to ignore the legislature's sentencing schemes and for this reason the majority's resort to common law merger has no place in contemporary sentencing. We must, in all situations where criminal acts have overlapping elements, examine the legislative intent to determine whether multiple sentences are appropriate.

The Superior Court and the trial courts have apparently had little difficulty in adjusting to referring to the legislative intent in such matters and it is puzzling to me how the majority concludes that we have left our trial courts and the Superior Court without cohesive rules in this area of the law especially where no party before us has raised that issue. In this case, the Superior Court examined the crimes of aggravated assault and unlawful restraint, resorted to the crimes code, and made various conclusions concerning the Commonwealth's interests in prosecuting an individual for committing both of these crimes, where some, but not all, elements coalesce. I have no difficulty in applying the *Michael Williams* analysis in this case and in concluding, as did Judge Wieand in his concurring and dissenting statement in this matter, that the crime of unlawful restraint is a crime which protects the separate and distinct interests of the citizens of this Commonwealth who have the right to move freely about without *restraint* that would expose them to the risk of serious injury. Aggravated assault does not protect the citizenry against the same behavior because it protects against *assaultive* behavior likely to inflict serious bodily injury upon them. Robbery protects the separate interest of protecting property and persons from the danger of bodily injury. I would hold these interests to be separate and distinct requiring separate sentences thus giving effect to the legislative will in including all these crimes in the crimes code and prescribing penalties for each. I would, therefore, reverse the opinion and order of the Superior Court and reinstate the sentences imposed by the trial court.

LARSEN, J., joins in this opinion.

McDERMOTT, Justice, dissenting.

The majority, by so precipitously overruling the recent case of *Comm. v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987) is offering an invitation to a bargain sale of

criminal justice, where they may be offering three or more crimes for the price of one.

We live under an elaborate scheme of laws designed to protect our persons and property. The legislature may proscribe punishment for whatever may not be constitutionally prohibited. They may order punishment as they see fit for any act they condemn. They may make each separate step toward an offense an offense in itself. They may protect different interests by making the same acts punishable for violating the separate interests that they perceive. In arson, for instance, they make the burning of a building a crime in itself. They may also make the burning a separate crime in that it endangers others, including the hands that come to help. In short, they proscribe the burning of a building as a crime, and because a burning building endangers others they have made that a crime in itself. By doing so they have identified two distinct interests violated by the same act of burning for which they have set separate penalties. One could say that when one is convicted of arson, the endangering aspect is merged into the arson, the greater of the two offenses. That sortie of reasoning can be spread across the whole spectrum of criminal law until every act is subsumed by accomplishing the greater of all offenses committed along the way. If two or more conspire to rob a bank and they do, then according to this theory the conspiracy, burglary, weapons offenses, thefts of cars, holding of hostages and assaultive acts to force the robbery are all subsumed by the accomplished robbery.

Because such a sortie of reasoning is possible and perhaps even attractive to many for various reasons, as the Superior Court thought in this case. Their reasons being the "practicality" of the case.

When courts decide under the merger doctrine that two crimes "necessarily involve" one another, it does not always mean that all the elements of one crime are included in the other. It means that on the facts of the case the two crimes were so intimately bound up in the

same wrongful act that as a *practical* matter proof of one crime necessarily proves the other, so that they must be treated as the same offense. *See, e.g., Commonwealth v. Jackson,* 271 Pa.Super. 131, 412 A.2d 610 (1979); *Commonwealth v. Richardson,* 232 Pa.Super. 123, 334 A.2d 700 (1975). If the same facts show that practically speaking there was only one offense against the Commonwealth, then the defendant may be punished for only one offense despite the number of chargeable offenses arising out of the transaction.

344 Pa.Super. 108, 125, 496 A.2d 31, 40 (1985). It was for this reason that we carefully laid down the rule in *Comm. v. Michael Williams,* supra, that the question is not one of practicality but an examination of the interests sought to be protected by the criminal statute.

Merger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. To determine whether multiple offenses involve substantially different interests, or how many evils are present in a given criminal act, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the crimes code.

*Comm. v. Michael Williams,* 514 Pa. at 135, 522 A.2d at 1101.

A person can therefore commit several different offenses while doing the same act. It is not our business to say that the legislature may not define different crimes, protecting different discrete interests from the same acts committed at the same time. Where one sets out on a criminal enterprise, all that they do may be prohibited as separate and distinct offenses and they may be guilty of each. A court may use all the penalties or any one as a proper punishment. The name, however, they put on the acts committed

should, at the very least, reflect the legislature's right to call those acts a crime.

LARSEN, J., joins in this dissenting opinion.